300 So.2d 467 (1974)
STATE of Louisiana
v.
Terry SELMAN.
No. 54376.
Supreme Court of Louisiana.
June 10, 1974.
Rehearing Denied October 11, 1974.
*469 LeRoy Smith, Jr., Mulhearn & Smith, Talluhah, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Thompson L. Clarke, Dist. Atty., John T. Seale, Asst. Dist. Atty., J. J. McKenzie, Mitchell B. Lansden, Special Counsel to Atty. Gen., Baton Rouge, for plaintiff-appellee.
MARCUS, Justice.
Defendant was charged with having committed aggravated rape upon Nancy Falvey, age seventeen, and Cheryl Falvey, age sixteen, between 10 p. m. and 12 midnight on September 1, 1973. He was tried, found guilty and sentenced to death. His appeal seeks reversal of the conviction and sentence.
The two victims and their dates, Gerald Price and Wallis DeWayne Girard, were on a sandbar at Delta, Louisiana, when they were approached by defendant Terry Selman who claimed to be a deputy sheriff. He represented that he had a gun and ordered the boys to stay by the edge of the water while he took the girls into some bushes, ordered them to disrobe and there raped them. According to the testimony of the victims and their dates, the defendant threatened to shoot and kill the girls unless they submitted.
Bills of Exceptions Nos. 1, 2 and 3 concern requested special charges which were refused by the trial judge.
The first of these requested charges (Bill of Exceptions No. 1) is as follows:
"Where the female yields because of the man's mere threat to arrest her if she refuses, he posing as a police officer, the act is not rape, nor is it rape where the threats are merely to abandon the female on the road after an automobile trip."
The accused claims that there was some testimony adduced at the trial which indicated that he posed as a police officer. Thus, it is contended that in order for the jurors to be totally confident that the mere posing as a police officer was not a sufficient *470 threat to constitute rape, the charge was necessary.
This charge was properly refused because it was not consistent with the testimony adduced at trial which was that the accused threatened to shoot and kill, not merely arrest, the victims. Furthermore, there was no evidence of an automobile trip. Where the defendant makes a request for special instructions to the jury, they must be such as are correct under the statement of facts as disclosed by the evidence. State v. Rone, 222 La. 99, 62 So.2d 114 (1952). Under Article 807 C.Cr.P., a special charge should be given by the court if it does not require qualification, limitation, or explanation and if it is wholly correct and pertinent.
The next requested charge (Bill of Exceptions No. 2) which was refused is:
"If you find that the defendant has been guilty of carnal knowledge with the consent of the accusing parties, that you will have to acquit the defendant."
This charge was likewise properly refused by the trial judge, as carnal knowledge of a juvenile is not a responsive verdict to the charge of aggravated rape. The trial judge correctly stated that such a charge would only be confusing to the jury. Furthermore, the issue of consent was covered in the general charge.
The third requested charge (Bill of Exceptions No. 3) recites:
"The charge of rape is one that is easily made but difficult to disprove, and for that reason the testimony of the prosecution witnesses should be examined with caution."
A refusal to give this charge was proper. The general charge included the burden of proof of the State. The requested charge might well be understood by the jury to be a comment on the evidence which is prohibited by Article 806 C.Cr.P.
Bills of Exceptions Nos. 1, 2 and 3 are without merit.
Bill of Exceptions No. 4 was reserved to the trial court's refusal to grant a new trial.
Two grounds are urged as the basis for the granting of this motion. The first of these is:
"The verdict is contrary to the law and the evidence in that the State failed to prove beyond any reasonable doubt any apparent force, or any resistance whatsoever. There was no evidence introduced at the trial that Defendant had any weapon or any method of carrying out his threats."
This contention is wholly without merit. The assertion that the verdict is contrary to the law and evidence presents nothing for review. Furthermore, the claimed failure of the State to prove any apparent force or resistance or that defendant had any weapon or method of carrying out his threats is without basis.
Aggravated rape (R.S. 14:42) is defined in pertinent part as follows:
"Aggravated rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances:
* * * * * *
"(2) Where she is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution."
There is ample evidence by the testimony of the victims that the accused stated he had a gun in his pocket and that he made numerous threats to kill them unless they submitted. The victims were in fear of great and immediate bodily harm, accompanied by apparent power of execution by the accused.
*471 The second ground advanced in this motion for a new trial is:
"The names of women jurors on the general venire list were removed after the jury was drawn, and that new names were placed in their place. That notwithstanding the exercise of reasonable diligence by the Defendant, [this] was not discovered before the verdict or judgment."
This ground is without merit. The exemption of women from jury service has been upheld in Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). This Court has repeatedly rejected the contention that the exemption of women from jury service contained in Article VII, Section 41 of Louisiana Constitution and Article 402 of the Code of Criminal Procedure violates the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution. We recognize that in Healy v. Edwards, 363 F.Supp. 1110 (1973), the United States District Court for the Eastern District of Louisiana declined to follow the Hoyt decision. However, decisions of lower federal courts are not binding upon state courts. Hence, we will continue to adhere to the last authoritative expression of the United States Supreme Court in Hoyt v. Florida, supra, until that court decides this issue to the contrary.
Bill of Exceptions No. 4 lacks merit.
Bill of Exceptions No. 5 was taken to the denial of a motion in arrest of judgment. The only ground briefed in this Court is that: "The verdict is so defective that it will not form the basis of a valid judgment." It is contended under this ground that the removal of women from the jury list made the whole proceedings so defective that there could be no valid verdict. This contention is answered by the reasons assigned in Bill No. 4 regarding the service of women on a jury.
Bill of Exceptions No. 6 was reserved to the imposition of the death sentence.
Defendant's objection is not that the death penalty per se is unconstitutional, but that the imposition of the death penalty in this case would be cruel and unusual punishment. He urges here only that the imposition of the death penalty in this case, where the life of no one was placed in jeopardy or no violent beating occurred, would amount to cruel and unusual punishment.
R.S. 14:42 defining aggravated rape provides the following penalty:
"Whoever commits the crime of aggravated rape shall be punished by death."
Since the advent of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Louisiana legislature, during the 1973 regular session, enacted amendments to Articles 814 and 817 of the Code of Criminal Procedure. Act 125 of 1973, effective July 2, 1973, amending Article 817 C.Cr.P. relative to qualifying verdicts provides:
"Art. 817. Qualifying verdicts
"Any qualification of or addition to a verdict of guilty, beyond a specification of the offense as to which the verdict is found, is without effect upon the finding."
Act 126 of 1973, effective July 2, 1973, amending Article 814 C.Cr.P. relative to responsive verdicts in pertinent part provides:
"Art. 814. Responsive verdicts; in particular
"A. The only responsive verdicts which may be rendered where the indictment charges the following offenses are:
"8. Aggravated Rape:
* * * * * *
"Guilty.
"Guilty of attempted aggravated rape.
"Guilty of simple rape.
"Not guilty."
*472 Since the alleged crime of aggravated rape occurred on September 1, 1973, the above amendments to the law are applicable in the instant case.
The sole issue presented in this bill is whether the said amendments removed the infirmities in our law which precluded the imposition of the death penalty for aggravated rape in Louisiana since Furman v. Georgia. In other words, is the death penalty for aggravated rape presently constitutionally permissible?
First, in State v. Myers, 261 La. 100, 259 So.2d 27 (1972), we stated that the court has consistently rejected the contention that the death penalty for aggravated rape constitutes cruel and unusual punishment where the victim's life was neither taken nor endangered. Therein, we cited State v. Williams, 255 La. 79, 229 So.2d 706 (1969) and State ex rel. Barksdale v. Dees, 252 La. 434, 211 So.2d 318 (1968). See also State v. Crook, 253 La. 961, 221 So.2d 473 (1969). In State v. Crook, supra, we stated:
"Since the Legislature is vested with the constitutional power to define crimes and fix punishments, this Court is concerned only with the constitutionality of the death penalty for aggravated rape. More specifically, we must determine whether the death penalty for such a crime is proscribed by the Eighth and Fourteenth Amendments of the United States Constitution.
"The Eighth Amendment provides:
"`Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'
"Cruel and unusual punishments are those that are barbarous extraordinary, or grossly disproportionate to the offense. In short, the constitutional prohibition is directed to punishments that shock the conscience of civilized men.
* * * * * *
"Aggravated rape is a grave offense. The authorization of capital punishment for rape, as we have observed, is not unusual in the United States. Such punishment is neither bizarre nor extraordinary. Nor do we appraise it as grossly disproportionate to the crime. * * *"
We recognize that this pronouncement was made prior to the Furman case; however, it is just as correct and viable today as it was then. Hence, we conclude that the death penalty for aggravated rape is not per se cruel and unusual punishment.
Furthermore, the fact that second degree murder provides for a penalty of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for a period of twenty years whereas aggravated rape imposes the death penalty does not constitute, in our opinion, cruel and unusual punishment. Aggravated rape has long been considered a capital crime in this State and one punishable by death. It is a serious offense with serious consequences. As stated in State v. Crook, the legislature is vested with the constitutional power to define crimes and fix punishments. We cannot say that a sentence is unconstitutional simply because this Court might feel that the crime of aggravated rape is less serious than second degree murder but yet carries a more severe penalty. Both are serious offenses. Any change in the penalty provisions addresses itself to the legislature. We can only look at the particular offense involved in order to determine whether the penalty imposed for its violation constitutes cruel and unusual punishment. In doing so in this case, we conclude, as we have held many times before, that the death penalty for aggravated rape is not cruel and unusual punishment and thus does not violate the Eighth Amendment to the United States Constitution.
We also feel that the amendments to Articles 814 and 817 of the Code of Criminal Procedure removed the infirmities pronounced in Furman v. Georgia. As we read the various concurring opinions in that case, we consider the primary objection *473 to the death penalty was in its administration, wherein it left to the uncontrolled discretion of judges or juries the determination whether defendants committing certain crimes should die or be imprisoned. It was this uncontrolled discretion in the imposition of the death penalty by the judges or juries for a particular crime which created a violation of the Eighth and Fourteenth Amendments to the United States Constitution.
Prior to these amendments, our law provided that in a capital case, the jury could qualify its verdict of guilty with the additional words "without capital punishment," in which case the punishment would have been imprisonment at hard labor for life rather than death. This clearly left to the uncontrolled discretion of the jury the determination whether the defendant committing a particular capital crime should die or be imprisoned. Act 125 of 1973, amending Article 817 of our Code of Criminal Procedure, prohibits any qualification to a verdict of guilty. Act 126 of 1973, amending Article 814 C.Cr.P. removed from responsive verdicts in capital cases: "guilty without capital punishment." We feel that the Louisiana legislature, by amending Articles 817 and 814 C.Cr.P., as aforesaid, removed the infirmity which caused the reversal of the convictions in Furman v. Georgia.
Finally, we find no substance in the argument that by permitting a jury to render responsive verdicts, there still remains in the jury the uncontrolled discretion to impose the death penalty. The responsive verdicts for aggravated rape are as follows: guilty, guilty of attempted aggravated rape, guilty of simple rape, not guilty. The reason for this argument lacking merit is that the jury has no discretion in the imposition of the death penalty for aggravated rape. If the jury finds under the facts of the case that the accused is guilty of aggravated rape, the death penalty shall be imposed. On the other hand, if the jury finds under the facts of the case that the accused is either guilty of attempted aggravated rape or simple rape, they will render a verdict of guilty for that particular crime. We must bear in mind that attempted aggravated rape and simple rape are separate and distinct crimes with separate penalty provisions for each. The fact that death is the mandatory penalty for aggravated rape but not for the responsive verdicts of attempted aggravated rape and simple rape is of no moment. The sole determining factor as to which penalty will be imposed depends upon the particular crime for which the jury finds the accused guilty, if any. Therefore, we conclude that there is no discretion in the jury for the imposition of the death penalty where the accused is found guilty of aggravated rape.
Hence, the present death penalty in Louisiana for aggravated rape is constitutionally permissible. It does not violate the Eighth and Fourteenth Amendments to the United States Constitution.
Bill of Exceptions No. 6 is without merit.
Bill of Exceptions No. 7 was taken to the trial court's refusal to grant defendant's motion to suppress the in-court identifications of the defendant by the victims and their dates.
Objection is made that a single photograph, that of the defendant, was exhibited to Cheryl and Nancy Falvey, the victims, by Deputy Wayne Deckard and Lt. Hearn. Following this, the girls and their dates viewed a lineup in which they identified the defendant. Further objection is made to the method of composition of the lineup, it being urged that the defendant was in dirty work clothes, whereas the other persons appearing in the lineup were in ordinary work clothes.
The contention is that the pre-trial photographic and lineup identifications tainted the in-court identifications to such a degree that the in-court identifications were legally impermissible.
*474 This bill is without merit for several reasons. It is established in the record that the defendant's identification resulted from the following facts: immediately following the alleged rape, all four witnesses proceeded to the police station to report the crime. A description of the assailant was given to the police and a sketch was drawn up according to this description. The victims testified that their assailant told them that his initials were M. B. and that he worked at Mississippi Hardware Company. Based on this information, the police picked up one Marty Beckman, an employee of Mississippi Hardware. Beckman was placed in a lineup, but none of the four witnesses identified Beckman. Further questioning of Beckman by the police determined that he had a brother-in-law who resembled the sketch made from the victim's description. Beckman provided the police with a photograph of the defendant, and the two victims were shown this photograph. Each positively identified the man in the photograph as the rapist.
The following day, defendant voluntarily surrendered. In a lineup conducted with the defendant and four other subjects of generally similar age and appearance, he was identified by the two victims and their dates who were with them on the night of the crime.
Even were we to assume that the pre-trial identifications were tainted, the in-court identifications were properly admitted. As stated recently by this Court in State v. Moseley, 284 So.2d 749 (La. 1973):
"While the practice of showing a suspect singly to persons for the purpose of identification, and not as a part of a lineup, is not favored, a claimed violation of confrontation depends on the totality of the circumstances surrounding it. Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Therefore, even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. State v. Newman, No. 53,422 on the docket of this Court handed down on September 24, 1973, 283 So.2d 756; State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967).
"We stated in State v. Newman, supra, that a determination of whether the witness' in-court identification was based upon an independent source involves these factors: (1) the prior acquaintance of the witness with the accused; (2) length of time the witness observed the perpetrator before, during and after commission of the offense; (3) the circumstances under which the observation was made. This would include illumination at the scene, the physical capacities of the witness and the emotional state the witness was in at the time of observation."
According to the testimony of the victims, they spent enough time in an area sufficiently lighted to clearly see their assailant on the night of the crime. Furthermore, the circumstances under which they confronted the accused were such that their observation of him was well implanted in their memory. They gave a full description to the police immediately thereafter, and one of the victims made a sketch of the defendant. Their dates likewise had ample opportunity to observe the accused at the scene of the crime. Thus, the in-court identifications by these witnesses had an independent basis sufficient for their introduction.
Furthermore, it is questionable whether defendant may raise this issue for he took the stand at trial and admitted his presence at the scene of the crime. It would seem that, because he admitted being *475 with the victims on the night in question and admitted having intercourse with one, the contention of tainted pre-trial identifications is not a viable one.
Bill of Exceptions No. 7 lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., dissents.
BARHAM, J., dissents and assigns reasons.
BARHAM, Justice (dissenting).
I respectfully dissent from the majority's holding that the imposition of the death sentence is constitutional under Louisiana's present scheme for providing death as a penalty for aggravated rape. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972), struck down the death penalty as it then existed in Louisiana. We have followed the holding in Furman repeatedly by ordering trial courts to resentence to life imprisonment defendants formerly sentenced to death. The per curiam opinion which precedes the separate opinions filed by all nine members of the Court states:
"* * * The Court holds that the imposition and carrying out of the death penalty in these cases constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. * * *." 408 U.S. at 239, 92 S.Ct. at 2727.
The majority of five who arrived at that conclusion consisted of Justices Douglas, Brennan, Stewart, White and Marshall. Mr. Justice Brennan and Mr. Justice Marshall found that the death penalty was cruel and unusual punishment per se. Mr. Justice Douglas pretermitted that question. Mr. Justice Stewart and Mr. Justice White limited their determination of cruel and unusual punishment to the death sentences before them because of the discriminatory manner in which those sentences were imposed. Of course, Mr. Justice Douglas also premised his holding on the discriminatory application of the sentence. He stated:
"* * * Whether a mandatory death penalty would otherwise be constitutional is a question I do not reach." 408 U.S. at 257, 92 S.Ct. at 2736.
It may be concluded then that the minimum requirement under Furman is that the statutory scheme which establishes the death penalty must eliminate the discretionary imposition of the sentence so that discriminatory practices against certain groups of persons cannot occur.
I examine the death penalty imposed in this case under our total statutory scheme for meting out that penalty. In 1973 the Louisiana Legislature revised La.Revised Statutes 14:29, 14:30, 14:30.1 and 14:31 to re-define homicide, first degree murder, second degree murder and manslaughter. The death penalty was retained for that class of killings which was defined as first degree murder (La.R.S. 14:30). All other homicides constituted either second degree murder (La.R.S. 14:30.1) which carries a sentence of life imprisonment, or manslaughter (La.R.S. 14:31), which carries imprisonment up to twenty-one years.
In an attempt to avoid the "unequal application" holding of Furman, the legislature amended La.C.Cr.P. Articles 814 and 817. The responsive verdicts to first degree murder dispensed with the former responsive verdict, "guilty without capital punishment." Responsive verdicts provided for aggravated rape also dispensed with the former qualifying verdict of "guilty without capital punishment." C.Cr.P. Art. 817, which had formerly provided that in a capital case a jury may qualify its verdict of guilty with the addition of the words, "without capital punishment," was amended to read:
"Any qualification of or addition to a verdict of guilty, beyond a specification *476 of the offense as to which the verdict is found, is without effect upon the finding."
The majority has found that these amendments have made the Louisiana statutory scheme for capital punishment impervious to attack alleging that the death sentence may be discriminatorily and unequally applied. I disagree with the majority's conclusion. While the responsive verdicts provided for in the Code of Criminal Procedure have dispensed with one qualifying verdict, "guilty without capital punishment," other qualifying verdicts remain responsive to a charge for "capital" crimes. A defendant charged with aggravated rape may, under the present law, have one of four verdicts returned against him which would be responsive to that charge. If the jury returns a verdict of "guilty," the defendant suffers the death penalty. (La.R. S. 14:42). However, without accounting to anyone, the jury could return a verdict of "guilty of attempted aggravated rape" and the defendant would be imprisoned at hard labor for not more than twenty years (La.R.S. 14:27); or the jury could return a verdict of "guilty of simple rape," and the defendant would be imprisoned at hard labor for not less than one, nor more than twenty years (La.R.S. 14:43).
It is readily apparent that Louisiana does not have a "mandatory death penalty" for a defendant charged with aggravated rape. The jury has a sliding scale for application of the penalty by returning a particular responsive verdict. The fact that the jury qualifies the verdict by classifying it as another offense makes no less real the total control left in the jury for deciding, upon any basis it chooses, whether one who has committed the crime of aggravated rape shall or shall not be sentenced to death. It is a common practice in this State, and I am sure throughout the nation, for juries to offer "mercy" under certain charges by returning a verdict of "guilty" to a lesser but included offense which is legally responsive to the charge for which the defendant was tried.
I am of the firm opinion that Louisiana has not met the Furman standard of equal application of the death penalty in the case of aggravated rape. As Mr. Justice Douglas stated:
"Any law which is nondiscriminatory on its face may be applied in such a way as to violate the Equal Protection Clause of the Fourteenth Amendment [citations omitted]. Such conceivably might be the fate of a mandatory death penalty, where equal or lesser sentences were imposed on the elite, a harsher one on the minorities or members of the lower castes. * * *" 408 U.S. at 257, 92 S.Ct. at 2735.
Our responsive verdict scheme cannot be applied to the death penalty for aggravated rape when juries are permitted to determine death or life for the same offense against different individuals without any standards and without any accounting. Again, quoting from Mr. Justice Douglas:
"* * * Yet our task is not restricted to an effort to divine what motives impelled these death penalties. Rather, we deal with a system of law and of justice that leaves to the uncontrolled discretion of judges or juries the determination whether defendants committing these crimes should die or be imprisoned. Under these laws no standards govern the selection of the penalty. People live or die, dependent on the whim of one man or of 12." 408 U.S. at 253, 92 S.Ct. at 2734.
Mr. Justice Stewart stated:
"* * * I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed." 408 U.S. at 310, 92 S.Ct. at 2763.
In his separate opinion, Mr. Justice White commented upon schemes for imposition of the death penalty for murder or rape where the penalty is left to the discretion *477 of judges or juries, and the death sentence is imposed with great infrequency. Mr. Justice White posed the question of whether imposition of the death penalty in such circumstances would violate the Eighth Amendment and concluded:
"* * * It is my view that it would, * * *." 408 U.S. at 312, 92 S.Ct. at 2764.
I can make no distinction between qualification of a single verdict which permits discretion as to death or imprisonment and a responsive verdict scheme which may be used to discretionarily accomplish discriminatory application of the death penalty.
With the knowledge that two of the majority in Furman believe the death penalty to be unconstitutional per se, and the knowledge that three of the majority require that the imposition of the sentence be mandatory and not left to the discretion of judge or jury, it seems to me that the United States Supreme Court would find our scheme of qualifying or responsive verdicts to aggravated rape an unconstitutional imposition of the death penalty.
I move to a further consideration of whether or not the present death penalty for aggravated rape is cruel and unusual punishment. Almost all of the opinions in Furman recognize that for many years the United States Supreme Court has examined the cruel and unusual punishment prohibition of the Eighth Amendment under the criterion of whether the punishments, by their excessive lengths or severity, are greatly disproportionate to the offenses charged. Mr. Justice Field first laid down this test in O'Neil v. Vermont, 144 U.S. 323, 12 S.Ct. 693, 36 L.Ed. 450 (1892). It is true Mr. Justice Field was dissenting, joined by Mr. Justice Harlan and Mr. Justice Brewer, but the majority did not reach that issue at all in O'Neil because of its finding that at that time the Eighth Amendment was only a federal restriction and that states were not regulated by its prohibition.
In Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the Court held a section of the Philippine penal code unconstitutional as violative of the Eighth Amendment prohibition against cruel and unusual punishment because "* * * it is a precept of justice that punishment for crime should be graduated and proportional to offense." In Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958), the Court said that the words of the Eighth Amendment were not static but that "* * * [t]he Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society. * * *" 356 U.S. at 101, 78 S.Ct. at 598. In Trop, the Court held that de-nationalization for wartime desertion was cruel and unusual punishment.
The legislature, in creating the crimes of first and second degree murder, has provided the death penalty for an offender who has killed a human being while engaged in the perpetration or attempted perpetration of aggravated rape. The majority's application of the death penalty to aggravated rape, when death is not a consequence of that criminal act, invites one who commits rape to kill the victim. There are two reasons why such a legal scheme will invite murder: (1) the penalty is no more severe if the rape victim is killed; and (2) a dead victim cannot identify the offender. Most rape convictions are based on one-on-one identifications. The only witness is usually the victim. It is illogical to subject one who rapes without any intent to kill or inflict great bodily harm, and who in fact has not endangered the life of the rape victim, to the same penalty as one who intentionally kills the victim after the rape.
A review of the entire record in this case justifies a reasonable inference that the defendant was actually unarmed. All witnesses testified that any coercion exerted by the defendant resulted from the defendant's hand (or hands) being in his pocket (or pockets), coupled with his threat to use a gun if the victims and their boyfriends did not respond to his orders. *478 No gun was ever exhibited. The two females were not beaten or physically threatened or abused. In some manner he accomplished the act of copulation with both females while they were lying side by side. Neither victim saw or felt a weapon during this episode when the assailant's trousers were removed. The boyfriends of the females were within sight, sitting only a few hundred feet away. While the act of rape is a heinous offense, it appears "unusual" to demand death for the defendant in this case when no greater penalty can be imposed upon one who rapes and kills.
The legislature did not change the rape statute when it amended the murder statute in its 1973 session. Should we conclude that the legislature intended to retain the death penalty for aggravated rape when this Court had, under Furman, set aside numerous sentences of death in rape cases on the ground that the sentence of death for rape was unconstitutional? In amending the murder statute, did the legislature intend that a rapist be encouraged to kill his victim by providing the same penalty whether the victim was released unharmed or was left dead? I am of the opinion that the distinction between first and second degree murder which was drawn by the legislature in the 1973 session evidenced a clear legislative attempt to provide that only first degree murder would constitute a capital offense. It also certainly evidenced the intent to consider rape a capital offense only when the victim is killed.
Finally, the "graduated and proportional to the offense" test set forth in Weems, cited with approval in Furman, would require a less harsh and cruel punishment for rape where a victim is left otherwise unharmed, than where death is also inflicted upon the rape victim. See the discussion in Ralph v. Warden, Maryland Penitentiary, 438 F.2d 786 (4th Cir. 1970). It can hardly be argued that rape is a more abhorrent or heinous crime than intentional killing, yet our legislature has provided that numerous intentional killings be punished by only life imprisonment while the majority here finds that rape requires the death penalty under each and every circumstance where threat of bodily harm and coercion are used.
In conclusion, I summarize Furman effectively abolished death as a penalty for aggravated rape in Louisiana. Our legislature has not seen fit to comply with the minimal requirements of the holding in Furman so as to reimpose the death penalty for rape. It has retained responsive verdicts in prosecutions for aggravated rape which give juries full discretion in determining whether to apply the death penalty or imprisonment to a defendant charged with aggravated rape. Further, our legislature has intentionally made the killing of a person during the perpetration or attempted perpetration of rape the subject of the death penalty. It may be deduced that rape, accompanied by the intentional death of the victim, is the only rape which carries the death penalty. The legislature has made numerous intentional killings subject only to imprisonment. It would indeed be unusual punishment to imprison an intentional murderer, and impose the death penalty upon one who commits rape without doing other bodily harm.
The majority holding that rape without death of the victim carries the same penalty as rape accompanied by the death of the victim invites the killing of all rape victims. Under a graduated appraisal of the severity of the offenses, when the death penalty is not imposed upon an intentional murderer, the death penalty should not be imposed upon one who commits rape under the circumstances of the case at hand.
I am of the opinion that under the holding of Furman v. Georgia, supra, the imposition of the death penalty in this case is constitutionally infirm, falling within that case's definition of cruel and unusual punishment.
I respectfully dissent.