319 So.2d 317 (1975)
STATE of Louisiana, Appellee,
v.
Stanislaus ROBERTS, Appellant.
No. 56090.
Supreme Court of Louisiana.
September 5, 1975.
Rehearing Denied October 9, 1975.
*318 Jack W. Caskey, James E. Williams, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Richard G. Lower, an attendant of a gas station, was shot and killed during an armed robbery. Defendant Stanislaus Roberts was indicted for first degree murder. The armed robbery is alleged to have been perpetrated by defendant Roberts and one Calvin Arceneaux. After a trial by jury, Roberts was found guilty as charged and sentenced to death. Defendant appeals his conviction relying upon five assignments of error.
*319 Assignment of Error No. 1.
Defendant argues that the trial court erred when it denied his motion for a new trial based upon the allegation that the state had failed to prove one of the elements of the crime.
Defendant was charged with first degree murder under R.S. 14:30(1) which provides in part that:
First degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated rape or armed robbery;
* * * * * *
Whoever commits the crime of first degree murder shall be punished by death.
It is alleged that defendant was engaged in the perpetration of an armed robbery which is defined by R.S. 14:64:
Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Defendant argues that the state did not prove that the items taken from the gas station had any value or, alternatively, that the state did not prove that the items were taken from the immediate control of the victim Richard Lowe.
Richard Lowe was the night attendant at the gas station and was in sole charge of the station at the time of the incident. That which was taken from the premises was certainly taken from his control. State v. Refuge, 300 So.2d 489 (La.1974).
The record shows that the perpetrators of the crime entered the premises unarmed. However, they removed a .38 Colt revolver from a desk drawer and armed themselves with it. This gun was used to threaten, and finally to kill, the attendant. It was the weapon employed by Roberts to facilitate theft of a second pistol and two empty moneybags. Its brandishment also contributed to the successful removal from the premises of the very same .38 Colt revolver and several gallons of gasoline or its monetary equivalent, three dollars.[1] When the perpetrators departed the premises, they took with them the two guns and the two moneybags from the station office and the three dollars which they had received for the gas.
The .38 Colt revolver was introduced into evidence; the original owner of the gun testified that he had sold the gun to the owner of the station, but he did not specify the sale price. The other gun and the moneybags, however, were not introduced into evidence. (Presumably they were never recovered.) The state made no independent tender of proof relating to the monetary value of the guns or the bags. At issue here, then, is whether the state is required to put on affirmative proof of the value of the thing taken in order to satisfy R.S. 15:271 which requires that "[t]he plea of not guilty throws upon the state the burden of proving beyond a reasonable doubt each element of the crime necessary to constitute the defendant's guilt." State v. Brown, 301 So.2d 605 (La.1974).
The phrase "anything of value" is defined very broadly by statute in Louisiana:
"Anything of value" must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal, public or private, and including transportation, telephone and telegraph services, or any other service *320 available for hire. It must be construed in the broad popular sense of the phrase, and not necessarily as synonymous with the traditional legal term "property." R.S. 14:2(2).
Certainly there is no question that the items taken here (an operable Colt police.38 caliber revolver which defendant used to kill the gas station attendant, another pistol, and two moneybags) would constitute something of value, certainly if "anything of value" is to be given "the broadest possible construction, including any conceivable thing of the slightest value."
However, we need not resolve the question of whether independent proof need be made of the specific value of the two guns and two empty moneybags inasmuch as the monetary equivalent of the gas taken is conclusively shown to have been three dollars, the amount which Arceneaux got for the gas from the startled customer.
This assignment of error lacks merit.
Assignment of Error No. 2.
Defendant assigns as error the trial judge's decision to allow the state to amend the indictment on the day of the trial. The pre-amendment indictment charged the defendant with the murder of Richard G. Lowe while defendant was engaged in an armed robbery. The state was allowed to amend the indictment[2] so that it would state that the same Richard G. Lowe was the person robbed as well as the person murdered. The amendment was granted, over counsel's objection, after court had convened on the first day of the trial but before the trial had commenced.[3] Defendant moved for a continuance alleging that defendant was properly informed of the nature of the accusation against him only moments before the trial began and that he should be granted a continuance to afford him time to alter or supplement his defense.
Before a trial begins, the trial judge may order an indictment amended. C.Cr.P. Art. 487. So long as the amendment merely clarifies the crime charged and does not add a new crime, the amendment is proper. State v. Bluain, 315 So.2d 749, decided on June 23, 1975; State v. Royal, 255 La. 651, 232 So.2d 465 (1970). The fact that such a clarification has been made does not necessarily prejudice the defendant. If, however, the defendant can show that he has been prejudiced in his defense on the merits by the change, the trial court must, on motion of the defendant, grant a continuance for a reasonable time. C.Cr.P. Art. 489. But this defendant failed to show in what respect his defense was prejudiced by the change. In the absence of any showing of prejudice, the trial judge properly overruled defendant's motion for a continuance. State v. Royal, supra.
This bill lacks merit.
Assignment of Error No. 3.
Defendant contends that the selection of the grand jury which indicted him and the petit jury which convicted him was unconstitutional, in derogation of the due process clauses of the Louisiana Constitution of 1921 and the United States Constitution. He argues that the systematic exclusion of women from these juries requires that this Court reverse the conviction.
Defendant was tried in September, 1974. On January 21, 1975, the United States Supreme Court held in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) that the Louisiana system of requiring women to register in order to serve on juries was unconstitutional.[4] *321 Then in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), that same Court held that the decision in Taylor would be applied only prospectively from January 21, 1975. This Court has applied the Daniel holding in State v. Rester, 309 So.2d 321 (La.1975) and has consistently affirmed that decision. State v. Wilson, 315 So.2d 646, decided on June 23, 1975; State v. Williams, 310 So.2d 528 (La.1975); State v. Devore, 309 So.2d 325 (La.1975).
Defendant's claim of unconstitutionality because of the exclusion of women from the jury venire is without merit.
Assignment of Error No. 4.
Defendant argues that the statute under which he was convicted and sentenced is unconstitutional in derogation of the Eighth and Fourteenth Amendments to the United States Constitution which prohibit the state from imposing cruel and unusual punishment.[5] The statute under which defendant Roberts was tried, R.S. 14:30(1), mandates the death penalty upon conviction. Defendant argues from Mr. Justice Brennan's concurrence in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) that the death penalty should be held unconstitutional per se. But the Furman decision did not hold that punishment by death was necessarily cruel and unusual.[6] And this Court has held that the death penalty imposed after conviction of first degree murder under another subsection[7] of the statute at issue here was not unconstitutional per se. State v. Hill, 297 So.2d 660 (La.1974). In the Hill case this Court stated:
"The death penalty for murder, when the perpetrator has the intent to kill or inflict great bodily harm on more than one person, is neither barbarous nor disproportionate to the offense. See State v. Selman, supra; State v. Crook, 253 La. 961, 221 So.2d 473 (1969); 21 Am.Jur.2d, Criminal Law, § 613, p. 563. In fact, the Due Process Clause of the United States Constitution sanctions the death penalty when it is imposed with due process of law.
"We conclude, therefore, that capital punishment per se is not constitutionally proscribed." 297 So.2d at 661.
We here hold that the death penalty mandated by R.S. 14:30 after conviction under subsection (1) is not unconstitutional per se.
Assignment of Error No. 5.
Defendant argues that the statute under which defendant was tried and convicted is unconstitutional because the jury is empowered to return a responsive verdict of second degree murder or manslaughter, neither of which carries the death penalty. He argues that the jury, therefore, maintains the power to apply the death penalty in a discriminatory manner in violation of the Eighth and Fourteenth Amendments to the United States Constitution as they were delineated in Furman v. Georgia.
*322 Under article 814 of the Louisiana Code of Criminal Procedure, the jury may render responsive verdicts for first degree murder which do not carry the death penalty. This Court has held on two occasions that the power of the jury to bring in a responsive verdict for a separate though lesser included offense which does not carry the death penalty is not contrary to the United States Supreme Court decisions in Furman v. Georgia. In the case of State v. Hill, supra, this Court reversed the decision of the trial court which had quashed an indictment on the grounds that the power of the jury to return responsive verdicts without the death penalty was unconstitutional. This Court stated:
"As provided in the statute, the death penalty is mandatory for first degree murder. Article 817 of the Louisiana Code of Criminal Procedure, as amended by Act 125 of 1973, prohibits a qualification of the guilty verdict. If the defendant is found guilty as charged, the trial judge must impose the death penalty. The penalty cannot be applied in a discriminatory manner. See Furman v. Georgia, supra; State v. Holmes, 263 La. 685, 269 So.2d 207 (1972). It is true that Article 814, as amended by Act 126 of 1973, lists as responsive verdicts second degree murder, carrying a sentence of life imprisonment, and manslaughter, carrying a sentence of imprisonment up to 21 years. See LSA-R.S. 14:30.1; LSA-R.S. 14:31. The use of these lesser verdicts, however, is contingent upon the jury finding insufficient evidence to convict the defendant of first degree murder, with which he is charged." 297 So.2d at 662.
Likewise in the case of State v. Selman, 300 So.2d 467 (La.1974), we affirmed a conviction for aggravated rape and the sentence of death. The Court pointed out that the Louisiana legislature, following the ruling in Furman v. Georgia, enacted amendments to Article 814 and 817 of the Code of Criminal Procedure. These amendments removed the possibility that a jury could qualify its verdict with the words "guilty without capital punishment." In such a case the punishment would have been imprisonment at hard labor for life. As the statute is presently written, if a jury brings in a verdict of guilty of aggravated rape or guilty of violation of any of the other four subsections of R.S. 14:30, the jury does not have a choice of verdicts. The Court in Selman stated:
"If the jury finds under the facts of the case, that the accused is guilty of aggravated rape, the death penalty shall be imposed. On the other hand, if the jury finds under the facts of the case that the accused is either guilty of attempted aggravated rape or simple rape, they will render a verdict of guilty for that particular crime. We must bear in mind that attempted aggravated rape and simple rape are separate and distinct crimes with separate penalty provisions for each. The fact that death is the mandatory penalty for aggravated rape but not for the responsive verdicts of attempted aggravated rape and simple rape is of no moment. The sole determining factor as to which penalty will be imposed depends upon the particular crime for which the jury finds the accused guilty, if any. Therefore, we conclude that there is no discretion in the jury for the imposition of the death penalty where the accused is found guilty of aggravated rape.
"Hence, the present death penalty in Louisiana for aggravated rape is constitutionally permissible. It does not violate the Eighth and Fourteenth Amendments to the United States Constitution." 300 So.2d at 473.
We here affirm the Hill and Selman rulings and determine that this bill lacks merit.
For the reasons assigned, the conviction is affirmed.
*323 BARHAM, J., dissents, being of the opinion that Louisiana's system of responsive verdicts makes the death penalty unconstitutional under Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See dissents in State v. Hill, 297 So.2d 660 (La.1974) and State v. Selman (La.) 300 So.2d 467.
DIXON, J., dissents for the reason expressed by BARHAM, J.
NOTES
[1] The record shows that the co-perpetrator Arceneaux pumped three dollars worth of gas for a customer. The startled motorist fled when he heard shots fired within the station and Arceneaux pocketed the money.
[2] Actually, the trial judge had suggested to the district attorney that the amendment be made so that the indictment would not later be invalidated as a similar one had been in State v. Smith, 275 So.2d 733 (La.1973). That case has now been overruled. State v. James, 305 So.2d 514 (La.1974).
[3] No prospective juror had been questioned or sworn; no witness had taken the stand.
[4] The invalidated constitutional provision, Art. 7, § 41, was operative until January 1, 1975, when the Louisiana Constitution of 1974 became effective. The new Constitution does not contain a provision granting women exemption from jury service unless they volunteer, and Article 402, C.Cr.P., was accordingly repealed by Act 20 of 1974 (Ex.Sess.).
[5] The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Fourteenth Amendment applies this prohibition to the states.
[6] Only two of the five justices comprising the majority, namely Justices Douglas and Brennan, concluded that the death penalty was cruel and unusual punishment per se under the Eighth and Fourteenth Amendments.
[7] That subsection was R.S. 14:30(4) which reads "First degree murder is the killing of a human being: . . . (4) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person."