340 So.2d 247 (1976)
STATE of Louisiana
v.
Bobby R. SMITH.
No. 57934.
Supreme Court of Louisiana.
October 14, 1976.
*248 Arthur A. Lemann, III, Supervising Atty., New Orleans, Ernest F. Teitell, Student Practitioner, Loyola Law School Clinic, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Bobby R. Smith was indicted for aggravated rape committed on October 19, 1975. La.Crim.Code art. 42. After a jury trial, Smith was found guilty as charged and sentenced to death. He assigned nine errors. Only four are urged on this appeal.

*249 Assignment 1

Defendant filed a motion to quash on December 15, 1975, alleging that the indictment failed to charge an offense punishable under a valid statute. The death penalty prescribed by Article 42 of the Criminal Code, according to the motion, is not a mandatory punishment because Louisiana law permits the jury to return responsive verdicts of attempted aggravated rape and simple rape to a charge of aggravated rape, and the penalty for those responsive verdicts is not death. For these reasons it is alleged that Article 42 of the Criminal Code is unconstitutional under the holding in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which, defendant contends, requires that the statutory scheme establishing the death penalty must at the very least eliminate the discretionary imposition of the death sentence in order that discriminating practices may not be employed by the jury. Such a practice is permitted by Louisiana's statutory scheme according to defendant.
We have held that the Furman decision does not require that Louisiana's responsive verdict system be held unconstitutional. State v. Selman, 300 So.2d 467 (La.1974). See also State v. Hill, 297 So.2d 660 (La. 1974), and State v. Smith, 322 So.2d 197 (La.1975).
In the interim, however, between defendant's conviction and sentencing and his appeal, the United States Supreme Court has on July 6, 1976 reversed our holding in State v. Selman, supra, see Selman v. Louisiana, ___ U.S. ___, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), and declared the death penalty for aggravated rape in Article 42 of the Criminal Code unconstitutional because of its mandatory character. A plurality of the United States Supreme Court in the Selman case was therefore of the opinion that the imposition and carrying out of the death penalty under Louisiana law constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution.
Nevertheless, since the record in the instant case does not disclose other reversible error, the conviction will be affirmed. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); State v. Thomas, 310 So.2d 517 (La.1975); State v. Spotville, 308 So.2d 763 (La.1975); State v. Edgecombe, 275 So.2d 740 (La.1973); State v. McCauley, 272 So.2d 335 (La.1973). However, the mandate in Selman v. Louisiana, supra, requires that the sentence be vacated. In carrying out this mandate the case will be remanded to the trial court for resentencing in accordance with the procedure prescribed by the majority of this Court in State v. Craig, 340 So.2d 191, and State v. Sledge, 340 So.2d 205, decided by this Court this day.
Unlike the case of State v. Craig and State v. Sledge, where the punishment ordained was imprisonment at hard labor for not less than one nor more than twenty years, the crime in the instant case was committed on October 19, 1975, fully one month after September 12, 1975, the effective date of the new attempt statute, which permits a sentence of imprisonment at hard labor for not more than fifty years for an attempt conviction if the crime attempted is "punishable by death or life imprisonment." La.R.S. 14:27D(1); Acts of 1975, No. 132, Section 1 (effective September 12, 1975). The legislature obviously intended to impose the most serious penalty available under the law. In this case, although there is a range of up to fifty years, the most serious penalty is fifty years at hard labor. The case will be remanded for resentencing.

Assignment 6
Refusal of the trial judge to suppress as evidence a gun taken by a security guard from defendant at his place of employment, the International Hotel, is the basis of this assignment. Defendant asserts the gun was seized in violation of the Fourth Amendment prohibition against unreasonable searches and seizures.
At the hearing on the motion to suppress, Robert Spitalsky, the security guard, testified that he was employed by the International *250 Hotel as the supervisor of security, and he was so engaged on October 19, 1975, the day of the rape. He testified that he knew both the victim and the defendant, both of whom were also employees of the hotel. In his capacity as security supervisor, Spitalsky was licensed to carry a gun. Upon his arrival at work on the 20th of October, he was told by the police that they were looking for Smith. Spitalsky was asked to detain Smith if he reported for work that day. Smith did report for work at approximately eight o'clock that morning. Spitalsky confronted Smith and asked him if he had a gun, and then, according to the testimony adduced at the hearing, Smith surrendered the gun. Spitalsky used no threats or force to obtain the gun.
In its brief the defense contends that Spitalsky was acting as an agent for the police since he was following their instructions in detaining defendant. In this capacity, the defense argues, Spitalsky should have given Smith the Miranda warnings before questioning him about the gun. Since the defendant was not read his rights by the "police agent", the argument goes, the seizure was illegal and the gun should be suppressed as evidence.
While it is doubtful that the facts support a conclusion that Spitalsky was a "police agent", the issue is resolved by determining that the Miranda warnings were not required to detain or disarm defendant. The Miranda decision (384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) never contemplated that the police, or their agents, must advise first and disarm later. Disarming a suspect is not the type custodial interrogation requiring Miranda warnings.
Furthermore, a review of the record permits a finding that defendant may be considered to have voluntarily surrendered the gun. No struggle ensued, no shots were fired and no threats were employed. Spitalsky testified that it was his intention to quietly disarm the suspect in order to avoid alarming the other employees of the hotel. Defendant has not contended that he was improperly frisked; he alleges only that Spitalsky just did not give him the Miranda warnings.
This assignment lacks merit.

Assignment 7
At voir dire examination the State's attorney in questioning prospective jurors inquired whether they had serious doubts that they could return a verdict of guilty to a charge of aggravated rape knowing the defendant would be condemned to death. When the prospective jurors replied that their beliefs and convictions dictated that they could not vote for the death penalty, the State requested that the jurors be excused for cause. Two of those questioned expressed only doubts concerning their convictions on capital punishment.
In all instances the trial judge granted the State's request and denied defense counsel the right to cross-examine the jurors so excused in an effort to rehabilitate them. This denial, the defense asserts, deprives defendant of his constitutional right to "full voir dire examination of prospective jurors" embodied in Section 17 of Article I of the Louisiana Constitution of 1974.
In addition, defendant takes the position that the refusal of the trial judge to permit defense counsel to question jurors on their scruples toward the death penalty was a violation of defendant's right to a fair trial guaranteed by the Due Process Clause of the Federal Constitution as interpreted and applied in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). See also La.Code Crim.pro. art. 768(2).
The decision in Witherspoon stands for the proposition that it is unconstitutional to exclude from the jury in a capital case persons with "qualms" about capital punishment. The Court reasoned there that since a section of the national population did think that the death penalty was wrong, to exclude jurors for such "qualms" would deprive defendant of a fair trial on the question of penalty. There, however, since it was not shown that the jury was biased with respect to the defendant's guilt, and *251 the conviction was allowed to stand, only the penalty was set aside. A like finding is made in the case at bar. No bias bearing upon defendant's guilt or innocence is claimed and none is shown by the record.
The sanction of the Witherspoon Case is limited to vacating the death sentence. That identical result is accomplished in the case at bar. Because of the decision in Selman v. Louisiana, ___ U.S. ___, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), we have set aside the death penalty and directed a noncapital punishment. This being the case, the death penalty issue in Witherspoon raised by defendant is rendered moot.

Assignment 9
Here defendant contends that the trial judge erred by overruling defense counsel's objection to the recall by the State of one of its witnesses after he had been cross-examined by defense counsel. The basis of the contention is that the witness' testimony on redirect examination pertained to matters not covered by direct or cross-examination.
Article 765(5) of the Code of Criminal Procedure invests in the trial judge the discretion to permit the introduction of additional evidence prior to argument after presentation of evidence by the State in rebuttal. Thus, while Section 281 of Title 15 of the Revised Statutes provides that redirect examination must be confined to the subject matter of the cross-examination, that statute also makes the application of the rule discretionary with the trial judge if the opportunity be not denied to recross on the new matter brought out on redirect.
Defendant was given the opportunity to recross the State's witness and did so. The condition of Section 281 was thereby fulfilled and no abuse of the discretion vested in trial judge is shown.
This assignment has no merit.
For the reasons assigned, the conviction is affirmed, and the case is remanded to the trial court for resentencing.
SANDERS, C. J., concurs in the affirmance of conviction, but dissents from sentence.
SUMMERS, J., notes that the result reached here expresses the view of a majority of the court with which he does not agree. See dissent to State v. Lee, La., 340 So.2d 180.
DIXON, J., concurs, not agreeing with treatment of assignment # 7.
CALOGERO, J., concurs and assigns reasons.
MARCUS, J., concurs in affirmance of defendant's conviction, but dissents from penalty and dissenting opinion in State v. Craig, La., 340 So.2d 191.
CALOGERO, Justice (concurring).
I concur in the result only.