382 So.2d 1019 (1980)
R. C. ANDERSON, Plaintiff-Appellant,
v.
Don LESTER et ux., Defendant-Appellee.
No. 7463.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
Rehearing Denied May 5, 1980.
*1020 Gahagan & Gahagan, Russell E. Gahagan, Natchitoches, for plaintiff-appellant.
Gold, Little, Simon, Weems & Bruser, Henry B. Bruser, III, Alexandria, for defendant-appellee.
Before CULPEPPER, GUIDRY and DOUCET, JJ.
CULPEPPER, Judge.
This is a suit for payment of a promissory note and for recognition of a mortgage on immovable property. Plaintiff, R. C. Anderson, holds the promissory note, dated January 27, 1975, in the principal amount of $77,000. Defendants, Donald E. Lester and Suzanne F. Lester, are makers of the promissory note secured by the pledge of a collateral mortgage note, which in turn is secured by the mortgage on their home and two noncontiguous lots. The defense is violation by plaintiff of the provisions of 15 U.S.C. § 1601, et seq., The Truth in Lending Act, (the Act), and certain Federal regulations issued pursuant thereto. In the alternative, defendants urge usury. Defendants also filed a reconventional demand for damages and attorney's fees under the Act.
Trial of the matter was initiated on June 2, 1977, at which time an exception of prescription of one year under Section 1640(e) of the Act was filed by plaintiff. After one day of trial, the case was continued. During the continuance, plaintiff caused a writ of sequestration to issue, seizing the mortgaged property. Plaintiff then filed a second suit against defendants and the sheriff to take physical possession of the property. Trial of the case continued on April 10-11, 1978, the parties stipulating that both pending suits, plaintiff's re-urged exception of prescription and defendants' subsequent motion to dissolve the writ of sequestration would be heard together. Trial was again continued to May 27, 1979, at which time it was completed.
With written reasons, the trial judge dismissed plaintiff's demands. He granted defendants' reconventional demand for rescission of the transaction, cancellation of the mortgage, damages and attorney's fees under the Act. The trial judge also ordered a forfeiture of the money loaned. The trial *1021 court opinion makes no reference to plaintiff's exception of prescription, or to plaintiff's second suit or to defendants' motion to dissolve the writ of sequestration.
The issues on appeal are whether the trial court erred: (1) in applying the Act; (2) in ordering the forfeiture of the loan proceeds; (3) in awarding damages and attorney's fees under the Act, despite the one-year prescriptive period; and (4) in failing to award damages and attorney's fees for wrongful issuance of the writ of sequestration.
FACTS
In late 1974, defendant Lester was experiencing financial difficulties. His business operations, a trucking firm known as Delta Express, Inc., and a feed mill, were heavily indebted. Lester was personally obligated on many of the business debts, as well as three Federal tax liens, the largest of which arose out of an assessment of estate taxes on Lester's father's estate. Defendant feared the immediate loss of his one unencumbered asset, his home. To pay off the most pressing creditors, defendant sought to obtain another loan.
Plaintiff is a wealthy individual who makes private loans. On January 27, 1975, plaintiff and defendant, accompanied by defendant's attorney, met at the office of plaintiff's attorney to complete a loan transaction. Mrs. Lester also came to the office for a brief moment to sign the appropriate documents. Both attorneys left the room while plaintiff and Donald Lester reached a final agreement. There is no contention that any notices or disclosures required under 15 U.S.C. § 1601, et seq., were made by plaintiff.
The plaintiff testified that he gave defendant $7,000 in cash and $70,000 by check or money order, making a total of $77,000 loaned, represented by a demand note bearing interest at the rate of 10% per annum from date, secured by a collateral mortgage note payable in monthly installments. Defendants admit signing the note for $77,000 but deny that they actually received more than the $70,000 money order. According to defendants, the $7,000 was additional interest on the loan. Defendants' attorney deposited $70,000 in a trust account. Records of the disbursement show that part of the funds were used to pay personal debts and part were used for business debts.
Defendant paid a total of $8,983.28 on the loan and then ceased payment. Plaintiff filed this suit on November 18, 1976 and obtained a default judgment, which was later set aside. On May 5, 1977, defendants' attorney mailed to plaintiff a letter stating:
"Pursuant to the provisions of the Truth in Lending Act and Regulation Z thereunder, Donald E. Lester, Jr. and Suzanne Furger Lester hereby elect to rescind the captioned credit transaction entered into with you on January 27, 1975."
Plaintiff's response was to continue prosecution of his suit for payment.
APPLICATION OF 15 U.S.C. § 1601, ET SEQ.
The following definitions provided in 15 U.S.C. § 1602 are applicable:
"(e) The term `credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.
"(f) The term `creditor' refers only to creditors who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

* * * * * *
"(h) The adjective `consumer', used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes."
15 U.S.C. § 1603 sets forth the following pertinent exemptions from the Act:

*1022 "This subchapter does not apply to the following:
"(1) Credit transactions involving extensions of credit for business or commercial purposes,

* * * * * *
"(3) Credit transactions, other than real property transactions, in which the total amount to be financed exceeds $25,000."
Section 1631 of the Act provides in part:
"Disclosure requirementsClear and conspicuous disclosure to person extended consumer credit
"(a) Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended, the information required under this part or part D of this subchapter.
"Statement of information where more than one obligor
"(b) If there is more than one obligor, a creditor need not furnish a statement of information required under this part or part D of this subchapter to more than one of them."
The plaintiff argues that the Act does not apply in this case for two reasons: First, because the transaction is exempt under Section 1603(1) and, second, because plaintiff is not a "creditor" as defined in Section 1602(f).
EXEMPTIONS UNDER THE ACT
In determining whether a particular transaction falls within the Act, the court in Sapenter v. Dreyco, Incorporated, 326 F.Supp. 871 (E.D.La.1971), affirmed 450 F.2d 941 (5th Cir. 1971) gave the following analysis of the issue:
"Not all credit transactions are covered by the Truth In Lending Act, however, and the Act expressly provides that it does not apply to `[c]redit transactions involving extensions of credit for business or commercial purposes * * *.' 15 U.S.C. § 1603(1).

* * * * * *
"Furthermore, the Truth In Lending Act was enacted as part of the Consumer Credit Protection Act of 1968, and specifically deals only with consumer credit transactions, characterized as `one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes.' 15 U.S.C. § 1602(h). (Emphasis added).

* * * * * *
"In determining whether a particular transaction is exempt, therefore, the purpose of the transaction or extension of credit is controlling, not the property on which the security interest is retained.. . ."
Accordingly, the first issue here is to determine whether the loan transaction is to be characterized as having a business or commercial purpose, or whether the loan is to be deemed a transaction within the comprehension of the Truth In Lending Act. Plaintiff, contends that the use of part of the funds for business debts rendered the business exemption applicable. Defendant contends that the loan should be characterized according to the purpose for which the money was borrowed or most funds actually used, which, under defendants' calculations, went toward personal and agricultural debts. Defendant is supported by Smith v. Chapman, 436 F.Supp. 58 (W.D.Tex.1977), where the federal court applied the Act to a transaction in which the plaintiff purchased an automobile primarily for her personal use, even though the vehicle was also used incidental to plaintiff's business. In doing so, the court stated:
"The Act is aimed at providing consumers with information in order to be able to intelligently shop for credit. 15 U.S.C. § 1601, Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). A `consumer credit' transaction is one in which the credit is given `primarily for personal, family or household purposes.' (emphasis added) 15 U.S.C. § 1602(h); 12 C.F.R. § 226.2(p). The term `business credit' is *1023 not defined but since the purpose of the Act is to provide information in `consumer credit' transactions, then it must be clear that business credit is something other than credit given primarily for personal, family or household purposes.
"It stands to reason that the business credit exemption arises whenever the credit is given primarily for a business purpose and not just when the credit is given entirely for a business purpose. On the other hand the Act applies when the credit is given primarily for a personal, family or household use and not just when it is given entirely for a personal, family or household use."
We find even more persuasive support for defendants' position in the case of Gerasta v. Hibernia National Bank, 411 F.Supp. 176 (E.D.La.1976), affirmed in part, reversed in part 575 F.2d 580 (5th Cir. 1978). In that case, the court applied the Act to a transaction in which the debtor had used the acquired funds for the purpose of repairing and/or improving property which initially was rented but "ultimately" was intended to be the debtor's home. This attention to the debtor's ultimate purpose is consistent with the usual liberal construction of the Act in favor of the debtor. Sellers v. Wollman, 510 F.2d 119 (5th Cir. 1975).
In the present case, the evidence clearly shows that the defendants' purpose in entering into this transaction was to prevent a seizure on their home. The defendants testified that they were motivated to seek a loan after being examined. By the attorney for a judgment creditor, Natchitoches Collections, Inc., who informed defendants that their home would be seized. The funds were applied to selected debts which represented the most immediate threats to the security of their home. Furthermore, both plaintiff's testimony, and correspondence from defendants' attorney show that plaintiff was made aware of defendants' concern for their home and the purpose of the loan.
We conclude the transaction was not one for business or commercial purposes and is not exempt under Section 1603(1).
"CREDITOR" UNDER THE ACT
The plaintiff next contends that the Act does not apply because he is not a "creditor" as defined in Section 1602(f). The court in Gerasta, supra, at the trial level, interpreted this section as follows:
"In enacting truth-in-lending legislation, it was Congress' intention to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit' 15 U.S.C. § 1601. The disclosure requirements, however, are imposed only on `creditors,' or those who `regularly extend, or arrange for the extension of credit for which the payment of a finance charge is required, whether in connection with loans, sales of property or services, or otherwise.' 15 U.S.C. § 1602(f) (emphasis added).
"The Board has further defined the term `creditor' to mean one `who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit.' 12 C.F.R. § 226.2(m) (emphasis added). The exemption is limited, therefore, to those whose `extensions [or arrangement] of credit are an occasional, isolated, and incidental portion of their business.'"
The question here, then is whether plaintiff was in the business of regularly extending credit. At trial, plaintiff denies that he made more than an "occasional" loan. He stated that he had no more than six to eight loans outstanding at any one time, including January, 1975.
Plaintiff's position at trial is contrary to all other evidence and to plaintiff's own admissions at the time of his deposition, when he responded as follows:
"Q. What is your occupation?
"A. Well, I used to be a farmer, I have a few cattle now, and I have a little lending business, just mostly coasting right now.
"Q. What is the nature of this lending business?
*1024 "A. What do you mean by the nature of it?
"Q. Well, what type of loans do you make?
"A. Most any kind of loans, I don't loan on automobiles, no school teachers or cars, or nothing like that. Mostly real estate.
"Q. Primarily real estate and would these loans be secured by mortgages?
"A. Right.
"Q. How long have you been doing this?
"A. Since 1945.
"Q. Say, at any particular point in time, can you tell me approximately how many loans you might have outstanding?
"A. That I have out now? I would have to go through the book and add them up . . . fifteen or twenty, I imagine, something similar to that.
"Q. Is this number fairly constant?
"A. Yes.
"Q. Moneywise, I suppose the total of the outstanding amount of the loans would vary, depending upon the size of the loan?
"A. Right, the size of the loan.
"Q. Would this also be true for the situation that existed in January of 1975?
"A. What do you mean, what would be true?
"Q. Well, the number of loans you had outstanding?
"A. Practically the same amount.

* * * * * *
"Q. Just say, right now, outstanding, would you say that you had in excess of a half a million dollars in loans outstanding right now?
"A. I got more than that.
"Q. Would you think it would be a million?
"A. No, not that much.
"Q. Seven hundred fifty thousand?
"A. I'm not going to tell you how much I got out, to be frank with you. I don't believe that's quite any of your business. It's between a half million and a million.
"Q. Would it have been about this amount when you made the loan to Don Lester?
"A. Approximately."
Further evidence of the extent and regularity of plaintiff's lending activities is found in plaintiff's income tax returns for the years 1965-1976, which were introduced at trial. These returns include for each of those years, a form entitled "Schedule C Profit (or Loss) from Business or Profession." Starting in 1968, plaintiff listed "Store and Loans" as his principal business activity. Entries show that plaintiff paid the following amounts of interest on business indebtedness:

 "1969 - $96,000.00
 1972 - 36,437.00
 1973 - 63,575.00
 1974 - 29,790.00
 1975 - 34,158.46
 1976 - 34,807.00"

At his deposition, plaintiff explained the 1976 entry as follows:
"Q. Other than that, the other large deduction item on this return is interest on business indebtedness. It says $34,809.85. Can you just briefly tell me the nature of that business indebtedness, what the money was borrowed for?
"A. No, I can't . . . that's money I borrowed?
"Q. Yes, sir, interest on money that you borrowed?
"A. Oh, well, that could have been several different places. I get by, and once in a while I get a chance to make a loan and I go and borrow the money . . . I used to know when I had some money coming in, but I don't know that no more. Since I have had them two years behind with their payments.
*1025 I used to borrow a little money from banks, to make a loan. I'm not sure what that was for.
"Q. Would the loan be for the store?
"A. No, sir, the store has nothing to do with the loan business. The store stands out on its own, it operates on its own.
"Q. This interest that we are talking about . . .
"A. Interest is the interest that I make on my loaning business.
"Q. But this interest that you paid, this $34,809.00?
"A. That is some more of my loan business.
"Q. You borrowed money and turned around and loaned it to somebody else?
"A. That's right."
Based on the above and other evidence in the record, we have no difficulty in concluding that plaintiff is a "creditor" covered by the Act.
REMEDIES UNDER 15 U.S.C. § 1601, ET SEQ.
Since we find the Act applies, the next issue is whether defendant is entitled to the remedies found in Sections 1635(a), (b) and (f), and 1640(a), which provide as follows:
"Section 1635. Right of rescission as to certain transactionsDisclosure of obligor's right to rescind
"(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.
"Return of money or property following rescission
"(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.
"Time limit for exercise of right
"(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs earlier, notwithstanding the fact that the disclosures required under this section or any other material disclosures required *1026 under this part have not been delivered to the obligor."
"Section 1640. Civil liabilityIndividual or class action for damages; amount of award; factors determining amount of award
"(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of
"(1) any actual damage sustained by such person as a result of the failure;
"(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000;

* * * * * *
"(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

* * * * * *
"Jurisdiction of courts
"(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."
In discussing the issue of remedies, the court in Gerasta, supra, on appeal stated:
"This court has recognized that the Truth in Lending Act provides `detailed remedial machinery' to redress violations of the Act. Sosa v. Fite, 498 F.2d 114, 117 (5th Cir. 1974). Therefore, courts should apply those remedies provided in the Act. Burgess v. Charlottesville Savings and Loan Association, 477 F.2d 40, 45 (4th Cir. 1973); Jordan v. Montgomery Ward & Co., 442 F.2d 78, 81-82 (8th Cir.), cert. denied, 404 U.S. 870, 92 S.Ct. 78, 30 L.Ed.2d 114 (1971).

* * * * * *
"Section 1635 and § 1640 are not mutually exclusive remedies; a consumer may be entitled to both rescission pursuant to § 1635 and damages pursuant to § 1640. See Mourning v. Family Publications Service, Inc., 411 U.S. 356, 376, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); Sellers v. Wollman, 510 F.2d 119, 123 (5th Cir. 1975)."
SECTION 1635
This section becomes operative where, as here, the consumer credit transaction results in a security interest in a debtor's home. Section 1635(a). Since the Act applies, defendant here had a right to rescind the transaction for three days after the transaction or delivery of notices. Where, as here, no notices were ever delivered, the debtor's right to rescind continued until exercised or the three-year period expired. Within the three years, defendant notified plaintiff of his desire to rescind. Defendant testified that plaintiff did not respond to the notice.
Plaintiff, in his brief, concedes that under Section 1635(b), defendant owes no interest and the mortgage is cancelled. Plaintiff raises a substantial question, however, as to the principal amount of the loan, i. e., $70,000. Does the debtor's right to rescind include the right to retain the loan proceeds.
In granting the rescission, the trial court ordered a forfeiture of the loan proceeds, stating that "The federal law also specifies that the plaintiff must forfeit the entire amount of the funds advanced to the defendants in connection with the loan." As we appreciate the federal jurisprudence, the trial judge erred in ordering an automatic forfeiture.
In Gerasta, supra, the court of appeal reversed the district court decision on the issue of the forfeit, only, and explained their position as follows:
"The statement of law contained in this opinion may be usefully illustrated by its *1027 application to the facts involved in the case on appeal. The Gerastas determined that the defendant Bank had violated the disclosure provisions of the Act. Therefore, the Gerastas notified the Bank of their intention to rescind the loan transaction pursuant to § 1635. The Bank did not perform its statutorily prescribed duties within ten days, allegedly because the Gerastas' rescission was equivocal and because the Bank was uncertain whether the transaction came within the ambit of the disclosure and rescission provisions of the Truth in Lending Act. The Bank's noncompliance exposed the Bank to the possibility of increased liability pursuant to § 1640(a).
"It has now been judicially determined that the Gerastas were entitled to rescind their transaction with the Bank and that the Gerastas' notice of rescission was valid. Therefore, the Bank now must return to the Gerastas any money or property that it has received from them in connection with this transaction. The Bank also must take any action necessary to reflect the termination of any security interest created in the Gerastas' property by the transaction. Upon the Bank's performance of its duties, the Gerastas must tender the loan proceeds to the Bank. They should be given a reasonable time within which to do so. Unless the Bank fails to take possession within ten days of tender, its interest will not be forfeited.

"This court's decision in Sosa v. Fite, 498 F.2d 114 (5th Cir. 1974), does not require a different result. In Sosa, as in the case on appeal, the creditors did not perform their statutorily prescribed duties after receiving the consumer's notice of rescission. In Sosa, however, the consumer's notice of rescission was accompanied by the consumer's express offer to return the creditor's property. The court in Sosa emphasized that the consumer's obligation to restore the creditor to the status quo ante was discharged by the tender. In the case on appeal, on the other hand, the Gerastas stated in their rescission notice that they refused to tender the loan proceeds until the Bank performed its statutorily prescribed duties." (emphasis supplied)
There is no evidence nor contention in the present case that defendant ever tendered to plaintiff the loan proceeds. Therefore, the forfeiture provision in Section 1635(b) is not now applicable. Upon plaintiff's performance of his duties under the Act, the defendant must, within a reasonable time, tender to plaintiff the $70,000 loan.
SECTION 1640. PENALTIES AND ATTORNEY'S FEES
There is also a substantial question of law on the issue of damages and attorney's fees under Section 1640. At trial on June 2, 1977, plaintiff filed an exception of prescription based on Section 1640(e), quoted above. The record does not contain a ruling on this exception, but there is reference to it having been overruled. Obviously, it was overruled because the trial court awarded the $1,000 maximum statutory damages under Section 1640(a)(2)(A)(i) and attorney's fees of $10,000 under Section 1640(a)(3).
Defendant concedes in brief that the exception of prescription of one year should have been maintained as to Section 1640 damages. However, defendant argues that this prescription does not apply to the award of attorney's fees, citing Burley v. Bastrop Loan Company, Inc., 407 F.Supp. 773 (W.D.La.1975). In that case, the district court held that a debtor who obtained rescission for a creditor's violation of the Act was entitled to an award of attorney's fees, even though his claim for damages had prescribed. This decision was reversed and remanded on the issue of liability, 590 F.2d 160 (5th Cir. 1979) but continues to be cited by some Federal District Courts for its holding on the issue of attorney's fees. See Clemmer v. Liberty Financial Planning, Inc., 467 F.Supp. 272 (W.D.N.C.1979).
Although decisions of Federal District Courts and Circuit Courts of Appeal construing federal statutes are persuasive, they are not binding on state courts. Only such decisions of the United States Supreme *1028 Court are binding on us. State v. Selman, 300 So.2d 467 (La.1974); Morris v. Transworld Drilling Company, 365 So.2d 46 (La.App. 3rd Cir. 1978); Bromley v. Crisp, 561 F.2d 1351 (10th Cir. 1977).
We cannot agree with the decision in Burley v. Bastrop Loan Company, Inc., supra. In our view, Section 1640(e) is clear and free of ambiguity. It states that "[a]ny action under this section (i. e., Section 1640) may be brought . . . within one year from the date of the occurrence of the violation." Section 1640 provides for damages, limited to $1,000, and a reasonable attorney's fee. Under 1640(e), any action for such relief must be brought within one year of the violation. We are supported in this view by Sosa v. Fite, 498 F.2d 114 (5th Cir. 1974) and the cases cited there, which hold that penalty damages under Section 1640 are prescribed in one year. If penalties are prescribed in one year, it necessarily follows that attorney's fees are also, because both are provided by the same statute, Section 1640.
It is noteworthy that in at least two cases the Court of Appeal, Fourth Circuit, State of Louisiana, allowed a prescribed claim for damages under 15 U.S.C. 1640 to be used as a defense to a creditor's suit on the transaction. Termplan Mid-City, Inc. v. Laughlin, 333 So.2d 738 (La.App. 4th Cir. 1976) and Reliable Credit Service, Inc. v. Bernard, 339 So.2d 952 (La.App. 4th Cir. 1977). In these two cases the court applied LSA-C.C.P. Article 424, which permits a prescribed claim to be used as a defense to a suit on a related transaction. However, by Act No. 254 of 1977 our legislature amended Article 424 to expressly exclude prescribed claims under the Federal Consumer Credit Protection Act. Thus, Article 424 no longer has application in these suits.
WRONGFUL ISSUANCE OF SEQUESTRATION
The next issue is whether defendants are entitled to damages and attorney's fees for plaintiff's wrongful issuance of the writ of sequestration seizing their home.
The grounds for a writ of sequestration are provided in LSA-C.C.P. as follows:
"Art. 3571. Grounds for sequestration
"When one claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action."
LSA-C.C.P. Article 3506 provides for dissolution of a wrongfully issued writ and for damages and attorney's fees.
Defendant complains here that the trial court erred in its omission of any reference to the issue of the wrongful sequestration. We agree. In light of the judgment canceling the mortgage, there was no real need to make a separate rule on the dissolution of the writ, but we find that a separate damage award is warranted because plaintiff had no grounds for the writ.
In a case dealing with a wrongful attachment, this court in American Steel Building Company v. Brezner, 158 So.2d 623 (La.App. 3rd Cir. 1963) stated:
"As stated by our Supreme Court in General Motors Acceptance Corp. v. Sneed, 167 La. 432, 119 So. 417, 421 (1929): `"Where a plaintiff sues out a writ of attachment in the honest belief that it is necessary for the protection of its rights, it seems rather unfortunate that it must be held liable for the payment of damages. But the writ of attachment is an extremely harsh remedy, and, when a party makes use of this powerful legal weapon he must be ready to respond in damages if it be found that the writ was wrongfully used."'"
The issuance of the writ of sequestration in this case, coupled with the posting of the bond to attempt to obtain release of physical possession of the premises to the plaintiff, and the companion suit by plaintiff against the sheriff seeking to compel actual physical delivery of the defendants' home to the plaintiff during the pendency of this litigation, appears to have been a *1029 willful and deliberate attempt to cause harm, damage, harassment, inconvenience, and mental anguish to the defendants. This action by the plaintiff was totally unwarranted for the reason that the property was subject to his mortgage of record, a suit for foreclosure was pending, and even had been tried one day at the time the writ of sequestration issued.
Mrs. Lester suffered emotional strain as a result of the issuance of the writ of sequestration and service upon her of the pleadings in the suit to compel the sheriff to deliver to R. C. Anderson actual physical possession of her home during the pendency of this drawn-out litigation. Mr. Lester also suffered.
Awards for inconvenience, anxiety and embarrassment caused as a result of the wrongful issuance of a writ are compensable damages. Homemakers Loan & Consumer Discount Company v. Arthur, 333 So.2d 686 (La.App. 4th Cir. 1976); American Steel Building Company v. Brezner, 158 So.2d 623 (La.App. 3rd Cir. 1964).
Defendants have prayed for $2,500 as damages and $1,500 as attorney's fees for the wrongful issuance of the writ of sequestration. They are entitled to these amounts.
USURY
Having granted defendants' demand for rescission of the transaction under the Act, we do not reach defendant's alternative demands based on usury.
DECREE
For the reasons assigned, the judgment appealed is affirmed in part and reversed in part and is recast to read as follows:
It is ordered, adjudged and decreed that, under the provisions of 15 U.S.C. Section 1635, that certain credit transaction entered into between plaintiff and defendants on January 27, 1975 is rescinded. Plaintiff is ordered to return to defendants the sum of $8,983.28 in interest previously paid on the loan. Plaintiff is ordered to cancel and return to defendants the promissory note herein sued on. Plaintiff is ordered to cancel the collateral mortgage note in the sum of $77,000 of date January 27, 1975, made by defendants payable to themselves, and by them endorsed in blank, and plaintiff is ordered to take such steps as necessary to cancel and erase from the public records that certain collateral mortgage executed by defendants of date January 27, 1975, for the principal sum of $77,000, recorded in Mortgage Book 339, page 747 of the records of Natchitoches Parish, Louisiana, with which mortgage the note is paraphed for identification. Within a reasonable time, not to exceed thirty days, after plaintiff has performed the above obligations under this judgment, defendants are ordered to tender to plaintiff the sum of $70,000, representing the principal amount loaned in the credit transaction, without legal or conventional interest or any other charge. If defendants fail to tender to plaintiff the $70,000 within said thirty days, this judgment shall have the effect of a judicial mortgage under the provisions of LSA-C.C. Articles 3321, et seq. If defendants tender the $70,000 within said thirty days and plaintiff does not accept the $70,000 within ten days after tender, ownership of the money loaned vests in defendants without any obligation on their part to repay it.
It is further ordered, adjudged and decreed that the exception of prescription of one year filed by plaintiff as to defendants' reconventional demand for damages and attorney's fees under 15 U.S.C. Section 1640 be sustained, and defendants' demand for said damages and attorney's fees is dismissed.
It is further ordered, adjudged and decreed that there be judgment herein in favor of Donald E. Lester, Jr. and Suzanne Surger Lester and against R. C. Anderson for the sum of $2,500 as damages, plus the sum of $1,500 as attorney's fees for the wrongful issuance of the writ of sequestration.
All costs in the trial court, as well as the costs of this appeal, are assessed against R. C. Anderson.
AFFIRMED IN PART, REVERSED IN PART, AND RECAST.