SARTAIN, Judge.
This litigation involves the applicability of the Federal Truth-in-Lending Act (15 U.S.C. § 1601 et seq.) and regulations referred to as Regulation Z (12 C.F.R. § 226.1 et seq.). The trial judge granted summary judgment in which a disclosure violation was found but the security contract (mortgage) was not rescinded; Canal Mortgage and Finance Company (creditor) was granted judgment in the contractual amount of the note; Leon Jackson (debtor) was awarded the maximum civil penalties of $1,000.00 and attorney’s fees in the sum of $250.00. The debtor has appealed. We reverse as to rescission, amend as to the money judgment, interest and attorney’s fees, and remand.
On December 29, 1975 Jackson borrowed from the creditor $2,785.92.[1] As security he executed a second mortgage on his home and a chattel on his furniture. The obligation was to be repaid in 48 monthly installments of $100.00, commencing December 29, 1976. The note also provided for 25% attorney’s fees on the balance due in the event of default.
The record reflects that Jackson made no payments on the loan prior to suit being filed.[2] On March 30, 1976 Canal Mortgage filed an executory proceeding on the home loan alleging, inter alia, that the balance due at that time was $3,007.37, plus contractual interest at the rate of 29.8% per annum from date of judicial demand, not to exceed 8% per annum on any amount paid one year or more after maturity, and 25% attorney’s fees.
Upon determining that Jackson and his wife were legally separated when the mortgage was executed, Canal Mortgage converted the proceedings to an ordinary one. Mrs. Jackson intervened on August 31, 1976, asserting a one-half interest in the *1349 property unencumbered by the second mortgage.
On August 27,1976 counsel for Mr. Jackson sent the first of two rescission notices to Canal Mortgage. The letter stated:
“The undersigned represents the above-referred individual and, as attorney for Leon Jackson, hereby rescinds this date the transaction dated December 29, 1975, on the grounds (but not limited to) that you falsely disclosed that by the chattel mortgage you obtained an interest in ‘all after-acquired property’ and thereby gave a false disclosure of the information required by 12 C.F.R. 226.8(b)(5) of Regulation Z and the Federal Reserve Board. This rescission is under the authority of 15 U.S.C. [§] 1635 and per said authority, said note, mortgage and chattel mortgage are void. 12 C.F.R. 226.9(d).”
On August 4, 1977 Mr. and Mrs. Jackson entered into a contract to sell the property at a private sale to be passed on or before October 3, 1977.
There then followed (September 27,1977) between counsel what is purported to be a second rescission notice, which stated:
“In furtherance of our telephone conversation of September 26, 1977, and in confirmation of same please note that Leon Jackson is ready to tender reasonable value on or about October 3, 1977. At that time there is a schedule(d) sale . of the property in question.”
On October 14, 1977 the first of two hearings was held on Canal Mortgage’s motion for summary judgment. It was stipulated that the mortgage would be canceled and the net proceeds from the private sale (set for October 17) would be deposited in the registry of the court pending further proceedings. The sale took place as scheduled, and after the first mortgage was satisfied, the sum of $2,385.92 was so deposited.
At a later date Mrs. Jackson was permitted to withdraw the sum of $500.00 in satisfaction of her interest in the property and her intervention was dismissed. The cause as thus postured proceeded to a final determination on the second hearing, then on both parties’ motions for summary judgment.
The trial judge in his oral reasons for judgment concluded that there was a disclosure violation on Canal Mortgage’s part. However, he also concluded that under the particular facts presented Jackson was not entitled to a rescission and was obligated under the terms of the note and cast him accordingly. As a result of the disclosure violation, however, Jackson was awarded the maximum civil penalty of $1,000.00 and $250.00 attorney’s fees.
This appeal by Jackson followed. He complains of (1) the failure of the trial judge to rescind the transaction and (2) the inadequacy of the award for attorney’s fees. Canal Mortgage has not appealed or answered Jackson’s appeal. The judgment is therefore final as to the disclosure violation and the award for civil damages.
The Truth-in-Lending Act (15 U.S.C. § 1601 et seq.), hereinafter referred to as the Act, was enacted to correct many ill practices noted in consumer finance matters. Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). To achieve this purpose uniform and full disclosure requirements are placed on the creditor-lender, the violation of which triggers rather drastic consequences.
Upon the detection of a disclosure violation, which vests in the debtor the right to rescind [section 1635(a)],[3] a four step statu *1350 tory scheme is set forth in paragraph (b) thereof, which in pertinent part states:
1. “When an obligor exercises his right to rescind ... he is not liable for any finance or other charge, and any security interest given by the obligor becomes void upon such rescission.
2. “Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property . .. and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.
3. “Upon the performance of the creditor’s obligations . . . the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.
4. “If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.”
Ideally, under the facts of this case and in compliance with the above quoted statute, the following should have occurred: Upon receipt of Jackson’s rescission letter of August 27, 1976 Canal Mortgage should have (1) within ten days returned to him any and all funds previously paid by him and (2) taken immediate steps to cancel their security interest (mortgage). Jackson then would have been obligated to tender (repay) Canal Mortgage the amounts advanced to him or paid to his other creditors on his behalf. The intent and purpose of the Act would have been satisfied and the parties returned to the status quo. Had Jackson made such a tender and Canal Mortgage refused, he would have owed them nothing. This, of course, did not occur and the instant litigation continued.
The issue as to rescission which determines Jackson’s liability under the note for interest and attorney’s fees depends upon the legal effect of his letter of August 27, 1976.
Jackson contends that under the wording of the Act, quoted in part above, the letter is sufficient. Canal Mortgage contends that the letter is deficient in that it does not contain a tender of the loan proceeds. Cited as authority for the latter contention are the cases of Gerasta v. Hibernia National Bank, 575 F.2d 580 (5th Cir. 1978); Sosa v. Fite, 489 F.2d 114 (5th Cir. 1974); Powers v. Sims and Levin, 542 F.2d 1216 (4th Cir. 1976); and Mitchell v. Security, Inc. Corp. of Palm Springs, 464 F.Supp. 650 (S.D.Fla.1979). A brief consideration of these cases and the facts involved in each is in order.
In Sosa, the debtor contracted to have aluminum siding placed on her home which was financed through a local lending agency. In due course she invoked the provisions of the Act, tendered the return of the siding and for a while continued to make the monthly payments on the mortgage. The creditor ignored her notice of rescission and effected a foreclosure proceeding when she quit making the monthly payments. The issue on appeal was the propriety of the trial court’s money judgment against her and the judgment lien placed on her property. The appellate court reversed and declared that by virtue of Mrs. Sosa’s tender of the siding and the creditor’s refusal to accept the same the indebtedness was forfeited. In Sosa the court did not *1351 have to address the issue of whether tender was a condition to rescission because tender did in fact accompany the debtor’s notice of rescission.
In Gerasta the debtors (husband and wife) placed a second mortgage on their home to secure improvements. As in Sosa, the creditor ignored the debtors’ letter of rescission. The trial court ordered the transaction rescinded, awarded the debtors civil damages, and further declared the loan proceeds forfeited by the creditor. On appeal the court reversed as to the forfeiture portion of the judgment. In doing so it noted that not only had the creditor failed to comply with the Act (step 2, above) but the debtors had also failed to tender the loan proceeds (step 3, above) and by virtue of the latter the debtors were not entitled to retain the loan proceeds (step 4, above). The matter was remanded to give the debtors an opportunity to tender the loan proceeds as a condition to forfeiture.
In Powers the debtors (husband and wife) placed a home improvement loan on their home in which a part of the loan proceeds was advanced on their behalf by the lending agency to satisfy other creditors.[4] The debtors tendered only that part of the loan proceeds that was attributable to the improvements to their home and refused to tender the sums that had been paid to other creditors. On that portion of the judgment that is pertinent here, the trial judge ordered the home improvements vested in the debtors without further obligation to repay the funds advanced to other creditors. On appeal the court concluded that the refusal of the debtors to tender all of the loan proceeds constituted an anticipatory breach on their part (step 3, above) which, in equity, entitled the lending agency to retain previous payments made on the loan and its security interest. The court, however, remanded the matter to permit the debtors to make the appropriate tender. In reversing as to the forfeiture the court ruled:
“We may well have been too technical in considering whether or not there was an anticipatory breach of contract under traditional contract principles. Rescission is an equitable doctrine, and there is nothing in the statutory provision of the right of rescission or in § 1635(b)’s provision of the procedural steps in effecting the right of rescission which limits the power of a court of equity to circumscribe the right of rescission to avoid the perpetration of stark inequity or to require that that be done now which ought to have been done in the first place. Section 1635(b), in its provision of a sequence of events, may work well in the normal case when both parties are properly advised and acting in full recognition of their rights and obligations. But surely the Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers. In equity, the lender here was entitled to the protection of the bank’s earlier first mortgage and of the tax lien which it discharged. If it did not promptly satisfy and release its new mortgage, the penalty should not have been a release of the borrowers from an obligation of restitution which they were unprepared to discharge in the first place and had no intention of attempting to do so. The district court, and we, exercising traditional equity powers, may condition the borrowers’ continuing right of rescission upon their tender to the lender of all of the funds spent by the lender in discharging the earlier indebtedness of the borrowers as well as the value of the home improvements.” Powers, supra, at 1221.
In Mitchell the debtor sought, inter alia, to have the obligation forfeited by the creditor. The question of whether tender of the *1352 loan proceeds by the debtor is a condition to rescission would appear to be squarely presented.[5] In an appeal holding that tender is a condition to rescission, the court stated: (464 F.Supp. 650, 652)
“In the present case the ‘property’ of the creditor is the $3,615.00 loan. It seems that return of the principal upon the rescission of the agreement would also be consistent with the statutory goal of returning the parties to the status quo before they entered into the contract.
* * * * * *
“This Court finds the Gerasta case controlling and holds that plaintiffs must return the principal to defendants as a condition of rescission pursuant to § 1635(b).”
However, as we will hereinafter observe, the court is actually referring to a condition to forfeiture rather than rescission.
In addition to the above authorities, there are two recent cases which warrant consideration. In Harris v. Tower Loan of Mississippi, Inc., 609 F.2d 120 (5th Cir. 1980), the creditor appealed a district court’s decision which (1) ordered the return to the debtor of sums previously paid by her and (2) also allowed the debtor to retain the balance of the loan proceeds. The issue presented on appeal was whether the creditor must first return all sums previously paid by the debt- or and then at a later date expect the debtor to tender the loan proceeds or whether the creditor could offset the value owed to it by the debtor from the sums it (creditor) initially tenders to the debtor. In remanding to permit offset the court stated: (609 F.2d 120, 123)
“Nothing in section 1635(b) prevents the creditor from offsetting the value owed to it by the obligor from the sum it initially tenders to the obligor. Such an arrangement prevents a perfunctory exchange of funds and protects the lender from a dissipation of the money while it is in the hands of the obligor. We believe this to be an acceptable course because it is the only means to insure the accomplishment of the congressional purpose of restoring the parties to the status quo ante while affording the statutory remedies to the obligor.
“We recognize that the statutory language and language from Sosa v. Fite, 498 F.2d 114 (5th Cir. 1974) and Gerasta, 575 F.2d at 584, can be read as envisaging performance of obligations by the creditor followed in time by tender of the loan proceeds by the obligor. Gerasta also foreclosed an argument that the creditor’s duties are conditioned upon tender by the obligor. Id. at 585. Nevertheless, this procedure for offsetting does not conflict with the spirit of those decisions. It will accelerate complete rescission while protecting creditors in appropriate cases. Our approval of offsetting does not conflict with Gerasta’s disapproval of conditional rescission in that we do not permit a creditor to refuse to perform unless or until the obligor tenders payment. The creditor must perform but is permitted to minimize losses from those borrowers who would eventually fail to tender the loan proceeds. We reaffirm the statutory language and the holding in Sosa that the creditor loses any rights in property unaccepted ten days after tender by the obligor.”
In Bustamante v. First Federal S. & L. Ass’n., etc., 619 F.2d 360 (5th Cir. 1980), the debtors contended that they were entitled to (1) rescission of the loan transaction, and (2) retention of the loan proceeds. During the course of the proceeding they (debtors) tendered only the monthly payments as they became due. The trial court denied the debtors’ claims on both of these issues. In reversing as to rescission and affirming as to forfeiture, the appellate court stated: (619 F.2d 360, 364)
*1353 “Although the trial court did not explicitly address the issue of materiality of the violation, it did hold that appellants had no right of rescission. Such a holding was clearly erroneous in view of the significant materiality of the understated APR.
“We have determined that the Busta-mantes properly exercised their right to rescind the transaction, since the Busta-mantes were not given an accurate disclosure of the APR. After the Bustamantes gave proper notice of rescission, First Federal did not perform its statutorily prescribed duties triggered by the notice under the Act, allegedly because the Savings and Loan Association was uncertain whether any error committed by it was a material violation under section 1635(a). The Bustamantes now argue that First Federal forfeited its right to recover the proceeds of the loan it had delivered to the borrowers because First Federal did not perform those duties. Because we find that the Bustamantes also did not perform their statutory duty to tender the monies already received, their forfeiture argument is without merit.”
Our appreciation of the above authorities leads us to the conclusion that when the court speaks of rescission it has reference to the loan transaction insofar as the same pertains to finance and other charges and the security instrument itself. On the other hand, when the court speaks of forfeiture, it has reference to the underlying obligation, that is the loan proceeds themselves stripped of the above. Even in the event of rescission, the debtor is still obligated to the creditor for the amount of the loan proceeds and this obligation remains until tender is made and refused. Tender does not affect rescission. Rescission is occasioned by a violation of the disclosure provisions of the Act. Within this general context the cases cited hereinabove appear to set forth a pattern of interpretation and applicability of the Act.
Sosa is the clearest example of rescission, tender, and forfeiture. Gerasta permitted rescission but denied forfeiture for lack of tender. Powers appears to have extended the equity approach of Gerasta, but unlike the latter declined to rescind on the showing that the debtors had no intention of making full tender. The facts in Mitchell clearly dictate the conclusion that while the court is speaking of “rescission” it is actually determining the issue of “forfeiture”. The loan agreement was rescinded by agreement. (464 F.Supp. 650, 652.) Plaintiffs were seeking to retain the loan proceeds without tender. Bustamante is the latest Federal authority we have cited and it clearly makes the distinction between rescission and forfeiture. It granted the former and denied the latter.
While these Federal authorities are not 'binding on State courts,[6] we have reviewed them somewhat in detail because the greater bulk of litigation in this area, as expected, is in the Federal forum. We find them to be of persuasive assistance to us in our endeavor to resolve legislative intent under varying circumstances.
The only Louisiana appellate authority on the issue of rescission versus forfeiture our research has disclosed is Anderson v. Lester, 382 So.2d 1019 (La.App. 3rd Cir. 1980). In Anderson the court, citing Gerasta, clearly established that forfeiture not rescission is conditioned on tender. We think Anderson is a proper application of the Act and we choose to follow its holding.
Returning to the case now before us, the trial court erred in refusing to order rescission when it had found a disclosure violation. While its holding would have no bearing on the cancellation of the mortgage, because it was cancelled by consent to permit the private sale rendering that question moot, it does have a bearing on the interest (29.81%) and attorney’s fees (25%) *1354 provided for in the note and for which the judge a quo granted judgment in favor of the creditor. Section (b) of the Act provides that when the obligor exercises his right to rescind, he is not liable for “any finance or other charges”. (Step 1, above.) The judgment of the trial court on these two items should therefore be reversed.
On the issue as to forfeiture, we find that Jackson is not entitled to retain the loan proceeds. These proceeds amounted to $2,785.92. After a credit of $200.00, he was obliged to tender the sum of $2,585.92. The amount placed in the registry of the court following the private sale was $2,385.92. This deposit was further depleted by the withdrawal of $500.00 to satisfy the separate claim of Mrs. Jackson. Assuming that the September 27, 1977 tender of the proceeds of the private sale was a continuing one, there never were sufficient funds* on deposit to constitute full tender. The question, then, is what is his liability to Canal Mortgage?
Section (b) of the Act (step 3, above) requires that the obligor “shall tender the property to the creditor”, upon the creditor’s performance of its obligations under the Act. For the purpose of resolving the present and respective rights of the parties, we consider that the obligation of the creditor to terminate its security interest was satisfied on October 17, 1977, when its mortgage was cancelled to permit the private sale. From that date forward Jackson was obliged to make his tender. He did not. For this reason we hold him (Jackson) responsible for the sum of $2,585.92 ($2,785.92 minus $200.00) plus legal interest thereon from the date of rescission (August 27, 1976) until paid. His obligation, however, is to be offset by the award of civil penalties ($1,000.00) and attorney’s fees in the amount hereinafter set, together with legal interest thereon from date of rescission (August 27, 1976)[7] until paid. This matter will be remanded to the trial court to effect the above accounting between the parties together with the disbursal of the funds on deposit and the rendition of an appropriate judgment in the event of any deficiency. We believe this disposition is a fair and reasonable one in light of the particular facts of this case and our effort to restore the parties as reasonably close to the status quo as the given circumstances permit.
As noted above, Jackson complains of the inadequacy of the $250.00 award for attorney’s fees. The record reflects that his attorney devoted some 53 hours to this matter. However, our review of counsel’s time sheet discloses that a fair portion of this time involved conversations with Mrs. Jackson’s attorney and the complications that arose as to her intervention and the necessity for her consent to the private sale. In making the award of $250.00 for attorney’s fees the trial judge noted, and the record confirms, that both summary judgments were submitted on stipulations of facts and that counsel for the creditor appeared cooperative. With due consideration for these factors, we find the award to be inadequate and increase the same to $500.00.
For the above reasons the judgment of the of the district court is reversed insofar as the same awarded judgment in favor of Canal Mortgage and Finance Company in the sum of $3,007.40,[8] together with interest thereon at the rate of 29.81% per annum from date of judicial demand, not to exceed 8% per annum on any amount paid one year or more after contractual maturity and 25% of principal and interest due as attorney’s *1355 fees. Judgment is rendered herein in favor of Canal Mortgage and Finance Company and against Leon Jackson in the sum of $2,585.92, together with legal interest thereon from August 27, 1976 until paid. Judgment is further rendered herein decreeing the loan transaction of December 29, 1976 rescinded; the judgment of the district court as to attorney’s fees is amended to increase the same to $500.00 together with legal interest thereon from August 27, 1976 until paid; and the judgment as to $1,000.00 civil damages awarded Leon Jackson is affirmed.
This matter is remanded to the trial court for disposition of the funds on deposit in accordance with the views herein expressed and for the further rendition of any judgment thereafter necessitated by any deficiency.
All costs relating to this appeal are assessed against the appellee, Canal Mortgage and Finance Company. All other costs are assessed as decreed by the trial judge.

REVERSED IN PART, AFFIRMED IN PART, AMENDED, RENDERED AND REMANDED.

. In actuality it was a debt consolidation loan. Of the $2,785.92 loaned to Jackson, he only received the sum of $33.13. The remainder of the funds were • paid on his behalf to other creditors.

. He made one payment of $200.00 after suit was filed.

. U.S.C. § 1635(a) states:
“Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until *1350 midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.”

. This included payments to the first mortgagee, delinquent insurance payments and a tax lien.

. The plaintiffs were apparently relying on the dissent in Powers v. Sims and Levin, 542 F.2d 1216, 1222 (1976).

. State v. Selman, 300 So.2d 467 (La.1974); Morris v. Transworld Drilling Co., 365 So.2d 46 (La.App. 3rd Cir. 1978); Bromley v. Crisp, 61 F.2d 1351 (10th Cir. 1977).

. Our reason for selecting August 27, 1976 as the date to commence the accrual of legal interest as to both parties is that neither party complied with the provisions of the Act. We are satisfied that Jackson, while talking tender, failed to make any showing that he ever intended to make full tender.

. This sum included interest to which the creditor is not entitled by virtue of the rescission of the loan transaction. 15 U.S.C. § 1635(b).